NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>                v.<br><br>NAJIER BOONE,<br><br>                      Defendant. | Case No. 2:20-cr-00185-BRM-4<br><br>OPINION |

**THIS MATTER** comes before the Court following a hearing on July 25, 2022 regarding the sentencing of Defendant Najier Boone ("Defendant"). (ECF No. 451.) Prior to the hearing, the U.S. Probation Office ("USPO") issued a Presentence Report ("PSR") regarding Defendant. (ECF No. 439.) Plaintiff United States of America ("Government") and Defendant submitted memoranda in advance of the hearing.[1] Having reviewed the parties' submissions and having held oral argument, for the reasons set forth below and for good cause having been shown, the Court **SUSTAINS** Defendant's objection to the assessment of one criminal history point for his 2017 conviction for a violation of N.J. Stat. Ann. § 2C:35-10(a)(4) and **SUSTAINS** Defendant's objection to his career offender designation.

---

[1] The parties submitted briefs directly to the Court and filed Sentencing Submission Notices on the docket. (*See* Gov. Br. (ECF No. 443), Def. Br. (ECF No. 445), and Gov. Reply Br. (ECF No. 446).)

1

**I.      BACKGROUND**

On March 18, 2022, Defendant pleaded guilty to Counts 1 and 24 of a thirty-seven count third superseding indictment.[2] (Plea Agreement (ECF No. 420).) Count 1 of the indictment charged Defendant with conspiracy to distribute and possession with intent to distribute controlled dangerous substances ("CDS"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and (b)(1)(c). (ECF No. 309 at 2–3.) Count 24 of the indictment charged Defendant with distribution of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (*Id.* at 12.) The parties agreed that, if Defendant is not designated a career offender, a sentence that results from the agreed total Guidelines offense level of 21 is reasonable, and, if Defendant is a career offender, then the total applicable offense level is 31 and a term of imprisonment within the range of 87 to 92 months ("Stipulated Range") is reasonable. (ECF No. 420, Schedule A ¶¶ 10–12.)

In the PSR, the USPO applied a "career offender" sentencing enhancement pursuant to U.S.S.G. § 4B1.1(a) as a result of Defendant's two prior felony convictions—specifically, a 2015 conviction for distribution of CDS in a school zone and a 2017 conviction for aggravated assault. (PSR ¶¶ 178, 188, 192.) The USPO assigned Defendant a criminal history score of ten, which establishes a criminal history category of V. (*Id.* ¶¶ 195–96 (citing U.S.S.G. § 4B1.1(b).)

Following the submission of the PSR, Defendant objected to the assessment of one criminal history point for his 2017 conviction for possession of marijuana under 50 grams in violation of N.J. Stat. Ann. § 2C:35-10(a)(4). (*See id.* at 57.) Defendant also objected to his career offender designation, arguing neither the 2015 nor 2017 convictions may be legally counted under governing Third Circuit law. (*See id.* at 58.)

---

[2] The indictment named Defendant along with several co-defendants charged with various offenses.

On July 6, 2022, the Government submitted a letter brief in support of Defendant's designation as a career offender and a sentence within the Stipulated Range. (Gov. Br. (*see* ECF No. 443).) On July 11, 2022, Defendant submitted a brief outlining the basis for his objections to the calculation of his criminal history score and the career offender designation. (Def. Br. (*see* ECF No. 445).) On July 15, 2022, the Government submitted a reply. (Gov. Reply Br. (*see* ECF No. 446).) On July 25, 2022, the Court heard oral arguments. (ECF No. 451.)

## II.    LEGAL STANDARD

This Court has jurisdiction pursuant to 18 U.S.C. § 3231. *See United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017). "In sentencing a defendant, district courts follow a three-step process": (1) calculate the applicable Guideline range, including application of any sentencing enhancements; (2) rule on any motions for departure and, if granted, explain the impact, if any, of the departure on the Guidelines calculation; and (3) "consider[] the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determine[] the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines." *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011) (citations omitted).

The standard of proof under the Guidelines for sentencing facts is the preponderance of the evidence. *United States v. Ali*, 508 F.3d 136, 143 (3d Cir. 2007) (citing *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006)); *see also United States v. Booker*, 543 U.S. 220 (2005). The Government bears the burden of demonstrating a sentence should be calculated by using a higher base offense level. *United States v. Howard*, 599 F.3d 269, 271–72 (3d Cir. 2010).

### III.  DECISION

####   A.  Criminal History Category

Defendant objects to his placement in a criminal history category of V. (Def. Br. at 6–8.) As discussed above, the USPO assessed Defendant ten total criminal history points, including one criminal history point for a 2017 conviction for possession of marijuana under 50 grams in violation of N.J. Stat. Ann. § 2C:35-10(a)(4). (PSR ¶¶ 190, 195.) As a result of the ten criminal history points, the USPO placed Defendant in criminal history Category V. (*Id.* ¶ 195.) Defendant argues the 2017 marijuana conviction should not be counted in calculating his criminal history category because the conviction was expunged pursuant to the New Jersey Supreme Court's July 1, 2021 order directing the automatic expungement of various marijuana convictions, including Defendant's conviction, pursuant to New Jersey's Marijuana Decriminalization Law. (Def. Br. at 6.) Defendant contends that, but for this point, he would have only nine criminal history points, placing him in Category IV. (*Id.*)

Sections 4A1.1 and 4A1.2 of the Guidelines provide the manner by which a defendant's criminal history points are to be calculated. U.S.S.G. §§ 4A1.1 and 4A1.2. The total criminal history points determine the criminal history category (I–VI) in the Guidelines Sentencing Table. U.S.S.G. § 4A1.1, cmt.; *see* U.S.S.G., Ch. 5, Pt. A ("Sentencing Table"). Sentences for expunged convictions are not used to compute the criminal history points. *See* U.S.S.G. § 4A1.2(j); application note 10. Nine criminal history points place a defendant in Category IV, while ten criminal history points place a defendant in Category V. *See* Sentencing Table.

The Government concedes Defendant's 2017 marijuana conviction should be excluded from the calculation of Defendant's criminal history points. Accordingly, pursuant to U.S.S.G. § 4A1.2(j), the Court **SUSTAINS** Defendant's objection to the assessment of one criminal history

4

point for his 2017 conviction for a violation of N.J. Stat. Ann. § 2C:35-10(a)(4). Defendant's 2017 conviction shall be excluded from Defendant's criminal history calculation.

### B. Career Offender Classification

Defendant objects to his classification as a career offender because he lacks the two requisite prior felony convictions necessary to meet the "career offender" definition under the Guidelines. (Def. Br. at 8.) As discussed above, the USPO determined two of Defendant's prior convictions, *i.e.*, a 2015 conviction for distribution of CDS in a school zone and 2017 conviction for aggravated assault, constituted predicate offenses for the career offender designation as defined at U.S.S.G. § 4B1.1(a). (*See* PSR ¶¶ 188, 192.)

A defendant is a "career offender" if (1) he was at least eighteen years old at the time he committed the offense of conviction, (2) the offense is a felony that is either a "crime of violence" or a "controlled substance offense," and (3) he has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a).[3] Defendant does not challenge the first two criteria have been satisfied. Rather, he contends that, under developing Third Circuit precedent, his 2015 and 2017 convictions do not fit within the "controlled substance offense" or "crime of violence" definitions to serve as the two predicate offenses required for satisfaction of the third criteria. (Def. Br. at 8.) The Court agrees.

Generally, to determine whether a previous conviction is a predicate "controlled substance offense" or "crime of violence," the Court uses a categorical approach to determine whether a conviction under a particular state or federal law qualifies as a predicate offense. *United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018). Under this approach, the court considers whether all

---

[3] "Once the career-offender enhancement is triggered, the offense level determined by that guideline applies if it 'is greater than the offense level otherwise applicable[.]'" *United States v. Wilson*, 880 F.3d 80, 88 n.11 (3d Cir. 2018) (alteration in original) (citing U.S.S.G. § 4B1.1(b).)

5

conduct covered by the statute of conviction meets the definition of a "controlled substance offense" or a "crime of violence," as those terms are defined in the Guidelines. *Id.* If the statute of conviction has the same elements or is narrower than its federal counterpart, the statute is considered a categorical match, and a conviction under the statute constitutes a predicate offense for a career offender designation. *See United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)). However, if the relevant statute covers conduct beyond what is covered by its federal counterpart, the statute is considered overbroad, and a conviction under the statute cannot serve as a predicate offense. *Id.*

The Court uses a modified categorical approach if the statute of conviction is "divisible," *i.e.*, it "comprises multiple, alternative versions of the crime." *United States v. Ramos*, 892 F.3d 599, 607 n.29 (3d Cir. 2018) (quoting *Descamps*, 570 U.S. at 262). A statute is divisible "[i]f statutory alternatives carry different punishments." *United States v. Aviles*, 938 F.3d 503, 512 (3d Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 518 (2016)). Under this approach, when the conviction resulted from a guilty plea, the court may consult a specific set of extra-statutory documents, *i.e.*, "the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *Brown*, 765 F.3d at 189–90 (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)), to identify the specific statutory offense that provided the basis for the prior conviction, then assess whether the offense categorically qualifies as a predicate offense, *Ramos*, 892 F.3d at 607 (citing *Descamps*, 570 U.S. at 263–64). The permissible documents are sometimes referred to as "*Shephard* documents." *See United States v. Mayo*, 901 F.3d 218, 225 (3d Cir. 2018). "While the modified categorical approach allows courts to look beyond the text of a divisible statute for that limited purpose, it does not

permit courts to scour the record to ascertain the factual conduct giving rise to the prior conviction." *Ramos*, 892 F.3d at 607 (citing *Mathis*, 579 U.S. at 511).

As discussed below, the Court concludes Defendant's 2015 conviction for distribution of CDS in a school zone is not a "controlled substance offense" because the statute of conviction, N.J. Stat. Ann. § 2C:35-7 ("Section 2C:35-7"), covers conduct beyond what is covered by its federal counterpart. The Court further concludes Defendant's 2017 conviction for aggravated assault is a "crime of violence." However, because Defendant lacks the two requisite prior felony convictions necessary to satisfy the third criteria required for a "career offender" designation as defined at U.S.S.G. § 4B1.1(a), Defendant's objection to his designation as a career offender for sentencing purposes is **SUSTAINED**.

### 1. Controlled Substance Offense

Defendant contends his 2015 conviction for distribution of CDS in a school zone is not a predicate offense because New Jersey's definition of CDS is categorically overbroad. (Def. Br. at 9–13.) He argues New Jersey criminalizes substances such as dextrorphan, a substance explicitly excluded as a controlled substance under federal law, *see* 21 C.F.R. § 1308.12, and acetylcodone, a substance not specifically prohibited by federal law. (Def. Br. at 12.)

Defendant argues he was convicted under Section 2C:35-7 (*see* Def. Br. at 11), which provides in relevant part:

> Any person who violates [N.J. Stat. Ann. § 2C:35-5(a)] by distributing, dispensing or possessing with intent to distribute a [CDS] or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree and shall . . . be sentenced by the court to a term of imprisonment. *Where the violation involves less than one ounce of marijuana*, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at,

7

> or between, one-third and one-half of the sentence imposed, or one year, whichever is greater, during which the defendant shall be ineligible for parole. *In all other cases*, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or three years, whichever is greater, during which the defendant shall be ineligible for parole.

Section 2C:35-7(a) (emphasis added). A CDS is defined in N.J. Stat. Ann. § 2C:35-2, in relevant part, as "a drug, substance, or immediate precursor in Schedules I through V," which in turn is defined with reference to the schedules set forth in N.J. Stat. Ann. § 24:21-5 through § 24:21-8.1. Dextrorphan and acetylcodone are substances listed in N.J. Stat. Ann. § 24:21-5.

The Court determines whether Section 2C:35-7 is a "controlled substance offense" for a career offender enhancement by resolving three questions: (1) whether Section 2C:35-7 is divisible; (2) if so, whether the *Shephard* documents establish with certainty which subsection of Section 2C:35-7 provided the basis for Defendant's conviction; and (3) whether the specific subsection is broader or narrower than, or equivalent to, the definition of a "controlled substance offense" under the Guidelines. *See Ramos*, 892 F.3d at 607.

Defendant contends the statute is divisible only as to whether the violation involved less than one ounce of marijuana or "all other cases." (Def. Br. at 11.) Defendant argues that once the Court consults the *Shephard* documents and determines he was not convicted for marijuana, application of the categorical approach demonstrates the definition of CDS for purposes of Section 2C:35-7 is broader than the Guidelines definition of CDS. (*Id.*) The Government argues the Court must analyze two statutes—Section 2C:35-7 and N.J. Stat. Ann. § 2C:35-5 because it is incorporated by reference into Section 2C:35-7—and apply the modified categorical approach to both statutes because they are divisible. (Gov. Reply Br. at 6–7.)

8

Section 2C:35-7 is clearly divisible because it "provides for two different punishments, . . . *but only into two alternative elements*, namely, violations involving less than one ounce of marijuana, and 'all other cases,' which would include any other [CDS]." *Aviles*, 938 F.3d at 514 n.7 (emphasis added) (quoting Section 2C:35-7). Therefore, the Court must determine whether the *Shephard* documents establish with certainty which provision of Section 2C:35-7 provided the basis for Defendant's conviction. *Ramos*, 892 F.3d at 607. The parties supplied the Court with a copy of the plea form, judgment of conviction, and a state court system-generated electronic case summary. These documents establish with certainty Defendant was not convicted of a violation involving marijuana, and therefore his conviction falls under the "all other cases" provision of Section 2C:35-7. These documents also establish with certainty Defendant was not convicted under N.J. Stat. Ann. § 2C:35-5. *See* Section 2C:35-7(c) (prohibiting the merger of a conviction arising under Section 2C:35-7 with a conviction for a violation of N.J. Stat. Ann. § 2C:35-5). Accordingly, the Court does not assess the divisibility of N.J. Stat. Ann. § 2C:35-5.

Having determined which subsection of Section 2C:35-7 provided the basis for Defendant's conviction, the Court next applies the categorical approach to determine whether a conviction arising under the "all other cases" subsection categorically qualifies as a "controlled substance offense" under the Guidelines.[4] *Ramos*, 892 F.3d at 607. Section 4B1.2 of the Guidelines defines a "controlled substance offense" as "an offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a *controlled substance* (or a counterfeit substance) or the possession of a *controlled substance* (or a counterfeit substance) with

---

[4] Although the Government would have the Court determine the conviction was specifically for heroin (Gov. Reply Br. at 5, 10), under the categorical approach, the Court looks only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions. *Descamps*, 570 U.S. at 261.

intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (emphasis added).

The Guidelines do not define the term "controlled substance," and the parties dispute how the term should be defined. Defendant argues the Court need look to only the definition under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*,—specifically, § 802 of the CSA—while the Government argues the Court may look to the definition of "controlled substance" under the CSA or under state law. (Def. Br. at 11; Gov. Reply Br. at 9–11.)

Section 802 of the CSA defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V [established in 21 U.S.C. § 812]," which in turn is defined with reference to the amended schedules set forth in 21 C.F.R. Part 1308. 21 U.S.C. 812(c). There is no dispute New Jersey's definition of controlled substance and § 802 of the CSA are not a categorical match. As Defendant points out, dextrorphan and acetylcodone are controlled substances under New Jersey law, *see* N.J. Stat. Ann. § 24:21-5, but are not controlled substances under the CSA. The issue presented here, whether the Court looks to only the definition of controlled substance under the CSA, or whether the Court may also look to substances controlled by the state, has been the subject of a deepening circuit split.

In a recent opinion, the Honorable Freda L. Wolfson, Chief U.S.D.J., surveyed existing case law, observing the Second, Fifth, Eighth, Ninth, and Tenth Circuits have construed the term "controlled substance" as used in the Guidelines to mean only a substance listed in the CSA while the Fourth, Sixth, Seventh, and Eleventh Circuits define the term as any substance controlled under

10

federal or state law. *United States v. Lewis*, No. 20-583, 2021 U.S. Dist. LEXIS 149938, *12–14 (D.N.J. Aug. 10, 2021). The Third Circuit has not yet addressed this issue.[5]

In *Lewis*, the court assessed whether the defendant's conviction under N.J. Stat. Ann. § 2C:35-5 for a marijuana violation constituted a predicate offense for purposes of a sentencing enhancement for firearms offenses under U.S.S.G. § 2K2.1(a)(4)(A). *Id.* at *5–6. To determine whether the court was limited to the CSA definition of "controlled substance" or whether it could consider state definitions as well, Judge Wolfson considered the Second Circuit's decision in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), in which the Circuit court explained, "As a general rule, commonly called the *Jerome* presumption, the application of a federal law does not depend on a state law unless Congress plainly indicates otherwise" and to look to a state's determination that a given substance should be controlled would be "a clear departure from *Jerome* and its progeny." *Id.* at *12–13 (quoting *Townsend*, 897 F.3d at 71 (citing *Jerome v. United States*, 318 U.S. 101, 104 (1943)). The court explained, "The Fifth, Eighth, and Ninth Circuits have employed similar reasoning to find that the term 'controlled substance' in the definition 'drug trafficking offense' in U.S.S.G. § 2L1.27 —which sets forth a definition nearly identical to that of 'controlled substance offense' under section 4B1.2(b)—is defined by the CSA." *Id.* (citations omitted); *see United States v. Gomez-Alvarez*, 781 F.3d 787, 793–94 (5th Cir. 2015); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011); *United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012); *United States v. Bautista*, 989 F.3d 698, 702–03 (9th Cir. 2021); *United

---

[5] The issue was argued before the Third Circuit on September 6, 2022 in *United States v. Lewis* at Case No. 21-2621. This issue also arises in *United States v. Paredes* and *United States v. Daniels*, also pending in the Third Circuit at Case Nos. 21-2657 and 21-3310. *Paredes* and *Daniels* have been stayed pending a decision in *Lewis*. (*See* Case No. 21-2657, Docket No. 12; Case No. 21-3310, Docket No. 16).

*States v. Abdeljawad*, 794 F. App'x 745, 748–49 (10th Cir. 2019). The court considered the Ninth Circuit's reasoning in *Leal-Vega* that adding the substances controlled by individual states to the definition of "controlled substance" in the Guidelines "would be contrary to the [Guideline's] goal . . . to seek 'reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.'" *Id.* at 14 (quoting *Leal-Vega*, 680 F.3d at 1167 (quoting U.S.S.G., Ch. One, Pt. A)).

The court further considered the reasoning of the Fourth, Sixth, Seventh, and Eleventh Circuits, which define "controlled substance" as any substance controlled under federal and state law. *Id.* at *14–15 (citing *United States v. Ward*, 972 F.3d 364, 371 (4th Cir. 2020); *United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017); *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020); *United States v. Pridgeon*, 853 F.3d 1192, 1198 (11th Cir. 2017)). The court explained the Fourth Circuit, whose analysis was emblematic of the minority of circuits' reasoning, applied a "plain meaning" approach to define "controlled substance" as "any type of drug whose manufacture, possession, and use is regulated by law." *Id.* (quoting *Ward*, 972 F.3d at 371). The court also considered the Fourth Circuit's conclusion that where the state statute of conviction forms the predicate offense, a court should likewise "look to see how the state law defining that offense defines the punishment and the prohibited conduct." *Id.* at *16 (quoting *Ward*, 972 F.3d at 372). The court further considered the Fourth Circuit's determination, "[T]he *Jerome* presumption was overcome because the Sentencing Commission 'has specified that we look to *either* the federal or state law of conviction to define whether an offense will qualify.'" *Id.* (quoting *Ward*, 972 F.3d at 374).

The *Lewis* court rejected the reasoning in the minority of circuits. The court concluded the term "controlled substance" is a "term of art," and it would be "illogical to define 'controlled

12

substance' based on its ordinary meaning" because it would "be antithetical to the goals of the Sentencing Guidelines to seek uniformity in sentencing to require that the Guidelines 'take into account the substances that the individual states "control."'" *Id.* at *18–19. The court further concluded the minority of circuits' interpretation is not supported by the grammar of the Guidelines' text. *Id.* at *19–20. The court also determined the *Jerome* presumption had not been overcome because "the Guidelines do not plainly indicate that the Sentencing Commission intended courts to rely on state law to define 'controlled substance.'" *Id.* at *21–22. The court explained the majority of circuits' reasoning, in looking to only the CSA's definition of a "controlled substance," "reinforce[s] the idea of imposing a *federal* sentencing enhancement under the Guidelines requires something more than a conviction based on a state's determination that a given substance should be controlled." *Id.* at *22–23 (citations omitted).

A second court in this district similarly assessed the circuit split to arrive at the conclusion "controlled substance" under the Guidelines does not include definitions under state law. As in *Lewis*, the court in *United States v. Scott*, No. 18-547, 2021 U.S. Dist. LEXIS 253093 (D.N.J. Dec. 6, 2021), determined "the term 'controlled substance' does not have an ordinary meaning" but "to the extent 'controlled substance' is a technical term of art in the Guidelines, it appears to mean a substance controlled by the federal government." *Id.* at *17–19. The court concluded the text of the Guidelines definition of "controlled substance" "commands courts to look to federal-and state-law *offenses*," not "federal-and state-law *controlled substances*." *Id.* at *20. The court rejected interpreting the term to mean "an offense under federal or state law that prohibits the possession of a federal or state substance with intent to distribute" because this construction renders the modifier "under federal or state law" superfluous in violation of the statutory construction canon against surplusage. *Id.* at *20–21. The court also found the context of the term "controlled

13

substance" and Sentencing Commission policy statements indicate the offenses are to be determined by exclusive reference to federal law. *Id.* at *23–27. The court further concluded, "[T]o the extent any ambiguity with the context of 'controlled substance' remains . . . such ambiguity is overcome by the *Jerome* presumption." *Id.* at *27.

Other courts in this Circuit have concluded the definition of "controlled substance" must be the definition in the CSA. In *United States v. Miller*, 480 F. Supp. 3d 614 (M.D. Pa. 2020), the district court adopted the reasoning of the Second, Fifth, Eighth, Ninth, and Tenth Circuits in support of its conclusion the definition of "controlled substance" under U.S.S.G. § 4B1.2(b) must be the one contained in the CSA. *Id.* at 619–21 (citing *Townsend*, 897 F.3d at 68, 71; *Gomez-Alvarez*, 781 F.3d at 793; *Leal-Vega*, 680 F.3d at 1166; *Sanchez-Garcia*, 642 F.3d at 661; *Abdeljawad*, 794 F. App'x at 748). The court "agree[d] that uniformity in federal sentencing is paramount, particularly with respect to application of the career-offender enhancement." *Id.* at 620. The court also determined, "'[C]ontrolled substance' . . . is a term of art that simply is not susceptible to an ordinary, commonly understood meaning untethered to a statute." *Id.* at 620–21. The court was further influenced by the Third Circuit's analysis in *United States v. Glass*, 904 F.3d 319 (3d Cir. 2018), in which the panel "*sua sponte* identified the federal CSA as the 'federal counterpart' to the Pennsylvania CSA for purposes of the career-offender challenge under review." *Id.* at 621 (citing *Glass*, 904 F.3d at 322).

The district court in *United States v. Jamison*, 502 F. Supp. 3d 923 (M.D. Pa. 2020) adopted the reasoning in *Miller* to conclude "controlled substance" under U.S.S.G. § 4B1.2(b) must be one contained in the CSA's schedules. *Id*. at 929. The court noted:

> Career offender status drastically increases sentencing exposure in most cases, and we decline to apply it differently to defendants before us with different state convictions. The dictates of fairness and consistency compel a uniform standard, especially when such

14

> drastic differences result. Furthermore, we agree . . . that "controlled substance" is a "term of art that simply is not susceptible to an ordinary, commonly understood meaning untethered to a statute." Instead, "whether a substance is . . . 'controlled' necessarily depends on the existence of a local, state, or federal law deeming it so." Thus, we will define "controlled substance" in Section 4B1.2(b) to reference those substances contained in the federal CSA's schedules.

*Id.* at 929–30 (citations omitted). In *United States v. Baskerville*, No. 19-0033, 2022 U.S. Dist. LEXIS 176560 (M.D. Pa. Sep. 28, 2022), the district court "follow[ed] the analytical approaches taken in *Miller*, *Jamison*, *Scott*, and *Lewis*" and found "'controlled substance' as referred to in § 4B1.2(b) must refer to the drugs listed in the CSA." *Id.* at *16.

For the reasons set forth by the courts in this district in *Lewis* and *Scott*, as well as by our sister district courts in *Miller*, *Jamison*, and *Baskerville*, the Court concludes the term "controlled substance" in U.S.S.G. § 4B1.2(b) is defined by the CSA, and the Court may not also look to the definition of "controlled substance" under state law. In sum, there is no clear indication in the Guidelines text or context to support the Government's contention that the Court may look to state drug schedules for purposes of determining whether a prior conviction constitutes a "controlled substance offense" for a career offender sentencing enhancement.

Accordingly, because New Jersey's controlled substance definition criminalize more substances than the CSA, it is broader than its federal counterpart under the categorical approach. Therefore, Defendant's conviction under Section 2C:35-7 does not constitute one of the two predicate offenses necessary to satisfy the third prong in U.S.S.G. § 4B1.1(a) for a career offender enhancement.

### 2. Crime of Violence

Defendant contends his 2017 conviction for aggravated assault is not a predicate offense because New Jersey's definition of "aggravated assault" is categorically overbroad. (Def. Br. at

15

13–16.) He argues that, unlike its federal counterpart, New Jersey permits a conviction without showing the actual use of force upon a victim. (*Id.* at 14–15.)

The parties agree Defendant was convicted under N.J. Stat. Ann. § 2C:12-1(b)(4) (Def. Br. at 13, Gov. Reply Br. at 2), which provides in relevant part:

> A person is guilty of aggravated assault if the person:
>
> . . .
>
> (4) Knowingly under circumstances manifesting extreme indifference to the value of human life points a firearm, as defined in [N.J. Stat. Ann. § 2C:39-1(f)], at or in the direction of another, whether or not the actor believes it to be loaded . . . .

Because the parties do not dispute subsection (b)(4) provided the basis for Defendant's conviction,[6] the Court proceeds to determine whether this specific subsection is broader or narrower than, or equivalent to, the definition of a "crime of violence" under the Guidelines. *Ramos*, 892 F.3d at 607. Section 4B1.2(a) of the Guidelines defines the term "crime of violence" in two ways: (1) a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the elements clause), or (2) a crime that is, among others, "aggravated assault" (the enumerated clause). U.S.S.G. § 4B1.2(a).

Defendant cites *Borden v. United States*, 141 S. Ct. 1817 (2021), in support of his argument subsection (b)(4) is categorically overbroad because it contains a *mens rea* element of "extreme indifference to the value of human life" that is broader than the elements clause. (Def. Br. at 14.)

---

[6] The New Jersey aggravated assault statute, N.J. Stat. Ann. § 2C:12-1(b), is divisible, *Abdullah*, 905 F.3d at 744–46). Although the parties agree subsection (b)(4) provided the basis for Defendant's conviction, Defendant provided the Court with the state judgment of conviction that establishes with certainty Defendant was not convicted under any subsection other than (b)(4). Subsection (b)(4) is not further "divisible," because it does not "comprise[] multiple, alternative versions of the crime." *Ramos*, 892 F.3d at 607 n.29 (quoting *Descamps*, 570 U.S. at 262).

16

The Government argues *Borden* is inapposite and subsection (b)(4) categorically matches the elements clause. (Gov. Reply Br. at 4-5.) The Court agrees with the Government.

In *Borden*, the Supreme Court held, "Offenses with a *mens rea* of recklessness do not qualify as violent felonies" under Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *Borden*, 141 S. Ct. at 1834. However, the Supreme Court recognized there may be laws whose *mens rea* go beyond mere recklessness, such as "depraved heart" or "extreme recklessness," and expressly reserved ruling on whether such crimes qualify as crimes of violence for the purposes of the ACCA. *Id.* at 1825 n.4.

Subsection (b)(4) requires proof a defendant (1) *knowingly* pointed a firearm at another person, *and* (2) under circumstances manifesting extreme indifference to the value of human life. New Jersey Courts, Model Criminal Jury Charges: N.J. Stat. Ann. § 2C:12-1(b)(4). Unlike the "mere recklessness" statute at issue in *Borden*, N.J. Stat. Ann. § 2C:12-1(b)(4) requires a more culpable state of mind. Accordingly, *Borden* is not applicable.

The Court's conclusion finds support in the decision of Chief Judge Wolfson in *United States v. Williams*, No. 19-134, 2022 U.S. Dist. LEXIS 109782 (D.N.J. June 21, 2022), in which the court held N.J. Stat. Ann. § 2C:12-1(b)(4) constituted a crime of violence for purposes of a sentencing enhancement under U.S.S.G. § 4B1.2(a). *Id.* at *9. Judge Wolfson analyzed the text of the state statute and Guidelines, then determined the proof required under N.J. Stat. Ann. § 2C:12-1(b)(4) of "circumstances manifesting extreme indifference to the value of human life" is consistent with the federal generic requirement of a threatened use of physical force against another. *Id.* at *9–10. The court added "pointing a firearm at another person . . . necessarily entails a threat to use 'physical force,'" and "pointing even an unloaded firearm at another person involves the 'threatened' use of 'physical force'" because the message conveyed to the intended target,

whether or not she is aware of the firearm, "is an intent or willingness to use an instrument capable of causing physical pain against the intended target." *Id.* at *9–14. Noting the Third Circuit had not yet addressed whether a firearm-pointing statute qualifies as a crime of violence under the elements clause, the court analyzed authority in other circuits holding firearm-pointing offenses in other states similar to subsection (b)(4) qualified as crimes of violence. *Id.* at *14 (citing *United States v. Hataway*, 933 F.3d 940, 945–46 (8th Cir. 2019) (Arkansas and South Carolina); *United States v. Collins*, 811 F.3d 63, 66–67 (1st Cir. 2016) (Maine); *United States v. Delgado-Sanchez*, 849 F.3d 1, 10–11 (1st Cir. 2017) (Puerto Rico); *United States v. Maid*, 772 F.3d 1118, 1120–21 (8th Cir. 2014) (Iowa); *United States v. King*, 673 F.3d 274, 280 (4th Cir. 2012) (South Carolina). Relevant to the issue raised by Defendant here, Judge Wolfson further explained *Borden* did not require a different result: "the statute at issue here requires 'knowing[]' conduct, not simply recklessness, and therefore is not disqualified as a crime of violence based on the *mens rea*." *Id.* at *19 (internal citation omitted) (alteration in original).

The Court can find no basis upon which to distinguish Defendant's argument here from the argument rejected by Judge Wolfson in *Williams*. Accordingly, Defendant's conviction under N.J. Stat. Ann. § 2C:12-1(b)(4) constitutes a crime of violence. However, while this conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1(a) for a career offender enhancement, the Court **SUSTAINS** Defendant's objection to his career offender designation because he lacks the two requisite prior felony convictions necessary to meet the "career offender" definition under the Guidelines.

### IV. CONCLUSION

For the reasons set forth above, the Court **SUSTAINS** Defendant's objection to the assessment of one criminal history point for his 2017 conviction for a violation of N.J. Stat. Ann.

§ 2C:35-10(a)(4) and **SUSTAINS** Defendant's objection to his career offender designation. Defendant's 2017 conviction for a violation of N.J. Stat. Ann. § 2C:35-10(a)(4) shall be excluded from Defendant's criminal history calculation.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  October 25, 2022